30 Kan. App.2d 30 (2001)
38 P.3d 140
In the Interest of T.A.
No. 86,550.
Court of Appeals of Kansas.
Opinion filed December 21, 2001.
Tish Morrical, of Hampton & Royce, L.C., of Salina, for the appellant/cross-appellee.
Autumn L. Fox, of the Law Office of Autumn L. Fox, of Abilene, for the appellees/cross-appellants.
Before PIERRON, P.J., GERNON, J., and BUCHELE, S.J.
BUCHELE, J.:
This case presents an issue of grandparent visitation. The natural mother appeals the trial court's decision ordering *31 that the paternal grandparents would have visitation on a schedule different from the schedule she offered.
T.A. was born on May 8, 1998. His father committed suicide on January 19, 1999. In April 1999, T.A.'s paternal grandparents filed a petition requesting reasonable visitation rights with T.A. The parties reached an agreement that the grandparents would have a visitation with T.A. every other Sunday from 7 a.m. to 7 p.m. starting in July 1999. In November 1999, the mother filed a motion to modify visitation to one Sunday from noon to 7 p.m. every 3 or 4 weeks.
In December 2000, the court ruled upon the motion to modify visitation, finding the mother was a fit parent, that substantial bonding had occurred between the grandparents and T.A., and that it was in the best interests of T.A. to continue some contact with his grandparents. The court modified the grandparents' visitation to one Saturday a month for 8 hours.
The mother filed a timely notice of appeal on January 23, 2001. A cross-appeal was filed on February 16, 2001. This court ordered the parties to show cause why the trial court's decision should not be vacated and remanded for reconsideration based on the holdings in Troxel v. Granville, 530 U.S. 57, 147 L. Ed.2d 49, 120 S. Ct. 2054 (2000), and Kansas Dept. of SRS v. Paillet, 270 Kan. 646, 16 P.3d 962 (2001). This court further ordered the parties to show cause why the cross-appeal should not be dismissed for lack of jurisdiction, because the notice of cross-appeal was filed after the 20-day limitation of K.S.A. 2000 Supp. 60-2103.
K.S.A. 38-129 provides:
"(a) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established.
"(b) The district court may grant the parents of a deceased person visitation rights, or may enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the child. Visitation rights may be granted pursuant to this subsection without regard to whether the adoption of the child occurred before or after the effective date of this act."
*32 Kansas Dept. of SRS v. Paillet, 270 Kan. 646, was decided shortly after the trial court's ruling in this case. In Paillet, the Kansas Supreme Court considered Troxel, 530 U.S. 57, and held that K.S.A. 38-129, as it applied to the case, violated the mother's due process rights under the Fourteenth Amendment to the United States Constitution. Paillet, 270 Kan. 646, Syl. ¶ 4.
The Paillets were the grandparents of S.D.S., the minor child of Danielle S., and the Paillets' deceased son. The trial court held that visitation by the paternal grandparents would be in the child's best interests and that a substantial relationship between the child and the grandparents had been established. This court did not agree with the trial court that the Paillets had a substantial relationship with S.D.S. but affirmed the trial court by applying equitable principles of clean hands and estoppel. Kansas Dept. of SRS v. Paillet, 27 Kan. App.2d 295, 3 P.3d 568 (2000).
This court's opinion was issued on March 31, 2000. Danielle's petition for review was filed on May 1, 2000. On June 5, 2000, the United States Supreme Court issued its opinion in Troxel, finding the Washington nonparental visitation statute "breathtakingly broad" as "any person" may petition the court for visitation at "any time" and held the statute as applied to that case unconstitutionally infringed on a fundamental parental right. 530 U.S. at 67.
In Paillet, the Kansas Supreme Court applied Troxel and determined an application of K.S.A. 38-129 to the facts conflicted with the due process requirements discussed in Troxel and reversed the judgments of the trial court and the Court of Appeals. 270 Kan. at 258-60.
Here, the mother stated the followings reasons to modify visitation:
1. The grandparents had failed to contact her when T.A. became ill while in their care and they exhibited a lack of knowledge in caring for him.
2. The mother wishes to tell T.A. about his father's death when she feels he is ready, but the grandparents feel they should be allowed to tell T.A. about his father and the circumstances of his death.
*33 3. The mother has completed her schooling, and the visitation was interfering in her family time with T.A.
4. The day care provider who transferred T.A. for visitation no longer wished to be in the middle of the situation, and the mother was forced to find other methods for the transfer.
5. The level of tension between the parties involved has begun to have an effect on T.A.
The grandparents made the following statements in response to the mother's motion:
1. T.A. has had significant contact with his grandparents over the last 2 years and it would be detrimental to T.A. to reduce the amount of contact.
2. The grandparents contacted the day care provider to find out whether the mother gave T.A. children's Tylenol when he was sick after they could not contact her.
3. The grandparents have always agreed the mother would be the one to tell T.A. about his father's death at an appropriate time.
4. The grandparents have always been agreeable to rescheduling visitation if necessary.
5. The mother has had no contact with the grandparents for over a year, and the only time there has been tension was when she unilaterally canceled visitation and refused to discuss rescheduling.
The trial court stated:
"First of all, the court is going to find that [the mother] is a fit parent; two, that there has been a substantial visitation and even bonding that has occurred between the grandparents and the minor child; three, the best interest of the child is to keep in contact with the biological grandparents; four, that the visitation will be one time a month not to exceed a period of eight hours on a Saturday."
Unlike the facts in Paillet, where the undisputed evidence was there was no relationship between the child and her paternal grandparents, the trial court here found that T.A. and his grandparents had developed a relationship. In Paillet, the trial court did not consider the mother's fitness as a parent, presumed or proved, whereas in this case the trial court specifically found the mother was a fit parent. The Paillet court did not find K.S.A. 38-129 to be unconstitutional on its face but only in its application in the facts of the case:

*34 "Application of K.S.A. 38-129(a) in Santaniello [v. Santaniello, 18 Kan. App. 2d 112, 850 P.2d 269 (1992)] basically conforms to the due process requirements discussed in Troxel [v. Granville, 530 U.S. 57]. The decisional framework of Santaniello conforms with Troxel's `traditional presumption that a fit parent will act in the best interest of his or her child.' 530 U.S. at 69. It places the burden of proof squarely on the party seeking visitation rights to show that visitation would be in the child's best interests. Application of K.S.A. 38-129(a) in the present case conflicts with the due process requirements discussed in Troxel. The trial court made no presumption, as required by Troxel, that a fit parent will act in the best interests of his or her child. In this case, the operative presumption seems to have been that a fit parent would not have denied visitation, which justified the trial court's substituting its judgment in determining the child's best interests.
"As Justice O'Conner observed in Troxel, the practical effect of such a presumption would be to allow the trial court to overturn any decision made by a fit custodial parent based solely on the judge's finding it would be in the child's best interests." 270 Kan. at 658-59.
The mother argues she is a fit parent and her decisions regarding the care, custody, and control of her child should not be substituted by the decisions of the State. She further argues any application of K.S.A. 38-129 as to a fit parent would infringe on the parent's due process right because the trial court would be substituting its decision for that of the parent. We find that Troxel and Paillet do not establish such a bright line rule. There is a fundamental presumption that a fit parent will act in the best interests of his or her child in determining visitation under K.S.A. 38-129 and that presumption must be given "special weight." 270 Kan. 646, Syl. ¶ 7. But a parent's determination is not always absolute; otherwise the parent could arbitrarily deny grandparent visitation without the grandparents having any recourse.
In granting grandparent visitation, K.S.A. 38-129 requires a finding of both the best interests of the child and that a substantial relationship has been established between the child and the grandparents. The burden of proof is upon the grandparents to prove these elements. The trial court must make both of these findings before grandparent visitation may be granted. Santaniello v. Santaniello, 18 Kan. App.2d 112, 114-15, 850 P.2d 269 (1992). But, the trial court's analysis must not end there. Third party visitation is a creature of statute and in derogation of a parent's constitutional right to direct the up bringing of his or her children. Third party *35 visitation statutes must, therefore, be strictly construed. A constitutional application of K.S.A. 38-129 requires the trial court to give material weight and deference to the position of a fit parent. Paillet, 270 Kan. at 658-59.
The trial court should presume that a fit parent is acting in the best interests of the child and not substitute its judgment for the parent's, absent a finding of unreasonableness. Here, the mother proposed visitation on Sundays from noon to 7 p.m. every 3 or 4 weeks. The court ordered visitation one Saturday per month for 8 hours. This does not appear to us to be a significant difference. The trial court did not make findings in sufficient detail to enable this panel to determine why the mother's proposed visitation schedule was not adopted. Absent findings of unreasonableness, a trial court should adopt the grandparent visitation plan proposed by a fit parent.
The mother filed a timely notice of appeal on January 23, 2001. A cross-appeal by the grandparents was not filed until February 16, 2001, the 24th day from the filing of notice of appeal. Notice of cross-appeal must be filed within 20 days after notice of appeal has been served and filed. K.S.A. 2000 Supp. 60-2103(h). Appellees must cross-appeal adverse rulings to obtain appellate review of those issues. Chavez v. Markham, 19 Kan. App.2d 702, Syl. ¶ 4, 875 P.2d 997 (1994), aff'd 256 Kan. 859, 889 P.2d 122 (1995).
The grandparents acknowledge their notice was untimely but claim the Court of Appeals has jurisdiction based on the fundamental fairness exception in State v. Ortiz, 230 Kan. 733, 736, 640 P.2d 1255 (1982), and In re T.M.C., 26 Kan. App.2d 297, 299, 988 P.2d 241 (1999).
The general rule is that appellate courts do not have jurisdiction to entertain an appeal unless a notice of appeal is filed within the statutory period. However, in the interest of fundamental fairness, the Ortiz court recognized an exception to the general rule where a criminal defendant either was not informed of his or her right to appeal or was not furnished an attorney to perfect an appeal, or was furnished an attorney who failed to perfect an appeal. 230 Kan. at 736. T.M.C. extended the fundamental fairness exception to civil proceedings, where a natural mother appealed from the order terminating *36 her parental rights. 26 Kan. App.2d 297. The Court of Appeals stated that because a parent has a constitutional right to counsel in order to afford fairness and impartiality in termination proceedings under the statutes, it was proper to apply the fundamental fairness exception to an untimely appeal from a termination order. 26 Kan. App.2d at 299.
Here, the grandparents argue they were not informed of their right to cross-appeal. There is no constitutional right of grandparents to counsel or to effective counsel in visitation rights proceedings. Therefore, the fundamental fairness exception found in Ortiz does not apply to the present case and the cross-appeal is dismissed.
This case is reversed and remanded for further proceedings in accordance with this opinion.
Reversed and remanded with directions.